Richard E. ROSS, Teresa Kordys Marfil, and Jorge Marfil-Sukerman, Plaintiffs-Appellees,

v.

Ray MARSHALL, Secretary of Labor of the United States of America, and R. B. Albina, District Director, Hartford Office of Immigration and Naturalization Service, Defendants-Appellants.

No. 1282, Docket No. 80–6370.

United States Court of Appeals, Second Circuit.

Argued April 21, 1981.

Decided June 22, 1981.

Harry L. Sheinfeld, Atty., U.S. Dept. of Labor, Washington, D.C. (James P. Morris, Senior Legal Advisor, Eric A. Fisher, Atty., General Litigation and Legal Advice Section, Criminal Division, Dept. of Justice, Washington, D.C., T. Timothy Ryan, Jr., Sol. of Labor, Nathaniel Baccus, III, Associate Sol. for Employment and Training, Jonathan H. Waxman, Counsel for Litigation, Washington, D.C., Richard Blumenthal, U.S. Atty., Dist. of Connecticut, George J. Kelley, Jr., Asst. U.S. Atty., Hartford, Conn., of counsel), for defendants-appellants.

Claudia Slovinsky, New York City, for plaintiffs-appellees.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge and BONSAL, District Judge.*

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

FEINBERG, Chief Judge:

Secretary of Labor Ray Marshall and R. B. Albina, District Director of the Immigration and Naturalization Service office in Hartford, Connecticut, appeal from a judgment of the United States District Court for the District of Connecticut, T. Emmet Clarie, Chief Judge. That order vacated a decision of the Secretary denying an application by plaintiff-appellee Richard E. Ross for a labor certification for his "live-in" housekeeper, plaintiff-appellee Teresa Kordys Marfil. The district judge held that the administrative proceeding leading to the Secretary's decision was flawed because of a failure to consider relevant evidence. For reasons indicated below, we conclude that the district judge erred in this ruling, but we remand for further consideration of an issue that was raised but not reached in the district court.

I.

Plaintiff Ross and his wife, who is an active participant in his business, live in Westport, Connecticut. Ross is in the real estate business in New York City where he buys old brownstones, which he then restores, remodels and sells. Ross commutes daily from Connecticut to his office in the city; Mrs. Ross goes to New York about twice a week to meet with contractors and designers and to look at brownstones for possible purchase. When the occasion demands, the Rosses use the New York City office as an apartment for an overnight stay. They also operate a bottled water business together, with offices in New York City; this business requires regular visits to upper New York State. The Rosses have one child, a boy who was nine years old in November 1978.

At that time, Ross applied for a labor certification for Marfil, an alien, so that he could hire her as a live-in housekeeper. This procedure is required by the Immigra-

tion and Nationality Act, which vests in the Secretary of Labor primary responsibility for determining whether aliens should be allowed to enter the country "for the purpose of performing skilled or unskilled labor." In order for an alien to be admitted for this purpose, the Secretary must certify that "there are not sufficient workers in the United States who are able, willing, qualified, . . . and available," and that employment of the alien "will not adversely affect the wages and working conditions of the workers in the United States similarly employed." See 8 U.S.C. § 1182(a)(14).[1]

In his original application, Ross stated that he travelled a great deal on business, that his wife usually joined him on business trips, and that he frequently entertained at home; he asserted that a live-in housekeeper was a "necessity" for him and his wife. In March 1979, the Certifying Officer of the Department of Labor issued a Notice of Findings, denying Ross's application. The reasons for denial included the following:

[The applicable regulation] provides that the job opportunity's requirements, unless adequately documented as arising from business necessity, are those normally required for the job in the United States, as defined for the job in the Dictionary of Occupational Titles (DOT). . . . [The DOT does not require that a housekeeper live in at the employer's premises.] The fact that [Ross's] wife "usually joins [him] on business trips" is not a business necessity; it is a preference. Further documentation is necessary to justify business necessity.

Ross responded to this demand for further documentation by offering two signed statements that reiterated his need for a live-in housekeeper. These statements did not add much to Ross's original assertions, and omitted any mention of Mrs. Ross's economic interest, and substantial work responsibilities, in the two family businesses described above. The Certifying Officer found the additional information inadequate, noting that the "rebuttal does not address the need for business necessity. From the information provided, [Mrs. Ross's] joining her husband on business trips and evening entertainment are considered style of living and personal preference, neither of which can be considered a business necessity." Accordingly, the Certifying Officer denied Ross's application in April 1979.

On May 8, 1979, Ross sought administrative review of this denial by forwarding to the appropriate agency official a "request for review" and "all the documents which accompanied the denial of certification." The "request for review," which focused on the issue of business necessity for the live-in requirement, consisted of five typewritten pages containing substantial and significant further evidence in support of Ross's claim; e. g., that his wife had "invested substantial sums of her separate funds in [the family real estate] business and actively participate[d] in its operation," which required frequent business trips away from home; and that Mrs. Ross had similar duties connected with the family bottled water business. In July 1979, a Hearing Officer affirmed the denial of Ross's application. Relying on the applicable regulation, the Hearing Officer specifically excluded from consideration the new evidence offered by Ross in his May 7 request for

---

1. The statute provides, in pertinent part:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

.    .    .    .    .

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who

are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed . . . .

review, concluding that "treatment of the new factual assertions . . . as either rebuttal evidence or as justification for a remand or a hearing would be wholly inappropriate."

Ross then brought this action to review the denial of his application, and to restrain the Immigration and Naturalization Service from deporting Marfil and her alien husband, Marfil-Sukerman.[2] Chief Judge Clarie construed the applicable regulation to require the Hearing Officer to consider the new evidence offered by Ross in his May 7 request for review. The judge therefore vacated the decision of the Hearing Officer and remanded the case to him, with directions to hold "a new hearing . . . at which time all available evidence shall be considered."[3] From that order, Secretary Marshall and District Director Albina appeal.[4]

## II.

■ Before addressing the merits of the appeal, we must briefly consider a threshold question of mootness. The parties have informed us that Ross reapplied for a labor certification for Marfil on March 27, 1981, and that this application is now pending. Ross could include in this new application all of the evidence excluded from consideration by the Hearing Officer who reviewed his November 1978 application. The new application does not moot this case, however, because the visas that are issued to aliens upon the granting of labor certifications are allotted on a first-come, first-served basis, according to the date of application for certification. As appellants stated at oral argument, "If [appellees] were to abandon this appeal, and simply go with the new application, they would [be put] . . . in a substantially less favorable position." Given this fact, we find that the issues

presented are still "live" and that the parties retain a legally cognizable interest in the outcome of the case. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 395–97, 100 S.Ct. 1202, 1207–08, 63 L.Ed.2d 479 (1980). Consequently, we conclude that this case is not moot.

Turning to the merits, the key issue on appeal concerns the proper interpretation of the regulation relied on by the Hearing Officer in refusing to consider the additional evidence submitted to him on review of the decision of the Certifying Officer. That regulation provides:

(e) The hearing officer shall review the denial of labor certification on the basis of the record upon which the denial of labor certification was made, the *request for review* and any legal briefs submitted and shall:

(1) Affirm the denial of the labor certification; or

(2) Direct the Certifying Officer to grant the certification; or

(3) Remand the matter to the Certifying Officer for further consideration or factfinding and determination; or

(4) Direct that a hearing be held on the case. (Emphasis supplied.)

20 C.F.R. § 656.26(e) ("the Regulation"). The Hearing Officer construed the Regulation as normally allowing consideration of only the evidence that was before the Certifying Officer and upon which he based his decision.

The Secretary argues that the district court erred in refusing to accept his construction of the Regulation, which has always been interpreted by the Department as a bar to the introduction of new evidence at the "administrative-judicial review" level, absent "special circumstances" found by the Hearing Officer not to be present in this case.[5] The continuing vitality of this

2. Marfil-Sukerman is also a plaintiff-appellee in this action.

3. The district judge had also issued an injunctive order in November 1979, preventing defendant Albina and the INS from deporting Marfil and Marfil-Sukerman. Apparently, Mar-

fil and her husband have not been deported, pending resolution of this litigation.

4. For the sake of convenience, we will frequently refer to appellants collectively as "the Secretary."

5. The Certifying Officer stated that:

interpretation of the Regulation is, appellants urge, "essential to the proper functioning of the labor certification program"; in the absence of "a definite cut-off date for the submission of additional facts," a "tremendous administrative burden ... would be created." [6] The Secretary concludes that the district court was required by established case law to accept the Department's interpretation, citing *United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977).

The Secretary also argues that the district court erred in refusing to accept the Hearing Officer's discretionary determination to exclude the evidence submitted with Ross's request for review. Appellants contend that the Hearing Officer's discretion in this regard has consistently been limited to cases presenting "extraordinary circumstances" not present in this case. Citing *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 534–35, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946), the Secretary concludes that "only a showing of the grossest abuse of discretion," absent here, "justifies the interference of the court" with the decision of a Hearing Officer not to consider additional evidence.

> Having determined that "the record upon which the denial of certification was made" is insufficient to warrant a setting aside of the Certifying Officer's action, I must next determine what use, if any, may be [made] of the evidence submitted by the Employer's attorney after the issuance of the DAT ["Decision and Transmittal," the Certifying Officer's final decision]. In a previous decision (*Jose da Costa*, 78–INA–134 (October 31, 1978)), I noted that the regulations do not specifically preclude the consideration of evidence submitted for the first time after the issuance of a DAT, and that a Hearing Officer is, in fact, specifically authorized, in his discretion, to either (1) remand the matter to the Certifying Officer for further consideration or factfinding and determination (29 C.F.R. 656.26(e)(3)), or (2) direct that an evidentiary hearing be held (*id.*, par. (e)(4)). It may be that such consideration of evidence obtained after the issuance of the DAT would be appropriate under circumstances in which the Employer was not adequately informed of his right to submit rebuttal evidence prior to the issuance of the DAT; or he actually and reasonably misunderstood his rights in that regard; or consideration of the record thus far developed suggests the existence of latent

We are persuaded by both of these arguments. Appellees contend that the "plain meaning" of the Regulation requires the Hearing Officer to consider new evidence offered as part of the request for review. This was the view of the district court, but we disagree. It is true that the Regulation requires the Hearing Officer to review the denial of a labor certification "on the basis of the record before the Hearing Officer," "the request for review" and briefs submitted. But, one construction of this directive is that the phrase, "request for review," means simply what it says, and is not a vehicle for bringing further evidence to the attention of the agency. The Department of Labor has consistently interpreted the Regulation in this way, see, e. g., *In re The Ground Floor Cafe*, No. 79–INA–3, at 8 (Dep't of Labor, Jan. 8, 1979) (unreported decision); *In re Da Costa*, No. 78–INA–134, at 5–6 (Dep't of Labor, Oct. 31, 1978) (unreported decision); *In re Chris' Nayong Pilipino Restaurant*, No. 78–INA–144, at 3–4 (Dep't of Labor, Oct. 17, 1978) (unreported decision). In light of the administrative burdens that would result from a contrary view, see note 6 supra, this is

> questions requiring further development of evidence for their resolution; or the new evidence could not have been previously obtained; or circumstances beyond the Employer's control prevented his timely submission of it to the Certifying Officer; or the Certifying Officer denied a reasonable request for an extension of time in which to submit such evidence. But such circumstances do not exist in this case. In view of that fact, I am persuaded that treatment of the new factual assertions, made in support of the Employer's request for review, as either rebuttal evidence or as justification for a remand or a hearing would be wholly inappropriate.

6. The Secretary points out that in fiscal year 1979, over 48,000 permanent labor certification applications were filed with the Department. He asserts that given that workload, his current interpretation of the Regulation is a practical necessity. "If new facts were ordinarily permitted to be introduced at the administrative-judicial stage, it is conceivable that every denial could result in one or more remands to the Certifying Officer for his consideration of new evidence."

surely a reasonable construction.[7] The district court therefore committed error when it declined to accept the Secretary's construction of the Regulation. See *Larionoff, supra.*

The district court also erred in reversing the Hearing Officer's discretionary determination that the present case did not possess "extraordinary" features warranting the consideration of newly presented evidence. In exercising his discretion, the Hearing Officer expressly relied on criteria employed in similar previous cases, e. g., *In re The Ground Floor Cafe; In re Da Costa, supra.* Moreover, these criteria have an obvious and persuasive relevance to considerations of due process—for example, new evidence will be considered at the review level if, at the lower level, the applicant was not adequately informed of his right to submit rebuttal evidence, or was denied a reasonable request for an extension of time in which to submit such evidence. See note 5, supra. Given these circumstances, we think that the Hearing Officer's determination was well within the discretion normally allowed to administrative agencies, cf. *Immigration and Naturalization Service v. Wang,* —— U.S. ——, ——, 101 S.Ct. 1027, 1030, 67 L.Ed.2d 123 (1981).

We therefore conclude that the judgment of the district court must be reversed, and the case remanded to that court for further proceedings consistent with this opinion.

### III.

Although we must reverse the decision of the district court, it does not necessarily follow that the determination of the Secretary was correct. The district court did not reach an argument that was raised below and is pressed again before us, namely, whether appellants' construction of the "business necessity" test in the present case comports with either the Department's statutory authority or with common sense.

The "business necessity" test is apparently designed to implement 8 U.S.C. § 1182(a)(14), which is reproduced in pertinent part in note 1, supra. The "business necessity" test does not appear in the statute but is contained in a regulation issued by the Secretary. The regulation provides in relevant part that:

> [T]he employer shall submit, as part of every labor certification application, on the *Application for Alien Employment Certification* form, as appropriate, or in attachments, documentation which shows clearly that:
>
> .   .   .   .   .
>
> (8) The job opportunity has been and is being described without unduly restrictive job requirements:
>
> (i) The job opportunity's requirements, unless adequately documented as arising from business necessity, shall be those normally required for the job in the United States, [and shall] be those defined for the job in the Dictionary of Occupational Titles (DOT) . . . .

20 C.F.R. § 656.21(b)(8)(i). The Secretary interpreted the "business necessity" test to require Ross to show that his own business activities and those of his wife, *outside their home,* required that they have a live-in housekeeper. Thus, when Ross initially showed only that his wife usually joined him on business trips and that they entertained at home frequently, the Certifying Officer deemed that showing to be merely a "style of living and personal preference, neither of which can be considered a business necessity."

---

7. Appellees point out that the Secretary recently published an amendment to 20 C.F.R. § 656.-26(b), which adds the following provision:

> The request for review, statements, briefs and other submissions of the parties and amicus curiae shall contain only legal argument and only such evidence that was within the record upon which the denial of labor certification was based.

20 C.F.R. § 656.26(b)(4). Appellees interpret this provision as a change in the Department's regulations on this point. The Secretary argues that the addition is merely a clarification of the Regulation. We think that the Secretary has the better of this argument.

Appellees make a strong argument that to the extent that the "business necessity" test can be applied at all in the context of domestic employment, it is the employer's household itself that is the "business" to which the test should be applied. The domestic employer should not, on this view, be required to show a necessity outside the home for live-in help, just as a restaurateur seeking labor certification for a French chef would not be required to show a necessity for wanting to open a French restaurant rather than a hamburger stand. Appellees argue that if a couple's social engagements, or simply their desire for leisure, cause them to seek live-in help, the Department has no statutory authority to reject these reasons as "mere" "personal preference" or "style of living."

The Secretary argues that these issues "were not addressed in the district court opinion" and therefore are not properly before us; should we "choose to consider" them, the Secretary asks for additional briefing time. Appellees did raise these questions in the district court but the district judge did not find it necessary to reach them. However, we think that the Secretary's interpretation of the "business necessity" test does raise significant issues of potentially far-reaching impact. Cf. *Pesikoff v. Secretary of Labor*, 501 F.2d 757 (D.C. Cir.), cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); *Silva v. Secretary of Labor*, 518 F.2d 301, 309–10 (1st Cir. 1975); Note, Alien Labor Certification, 60 Minn.L.Rev. 1034, 1050 & n. 69 (1976); Singhal, Labor Certification Under Revised Regulations, 51 S.Cal.L.Rev. 823, 831–34 (1978). We believe that the district court should deal with these questions in the first instance. The district court should consider on remand whether anything more than a showing of bona fide desire for a live-in domestic housekeeper is required under the statute or the applicable regulation, properly construed.[8]

Reversed and remanded for further proceedings consistent with this opinion.

---

8.  Appellees also argue that the Department's lack of guidelines on, and inconsistent application of, the "business necessity" test is arbitrary and an abuse of discretion; that business necessity was proved by the evidence submitted to the Certifying Officer; and that the Certifying Officer erroneously denied labor certification even if business necessity was not shown, because there were insufficient American workers available either to live in or to live out. In light of our disposition of this appeal, these arguments can be presented to the district court on remand.